Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States in this honorable court. Good morning to all. I am pleased to be sitting here today with my colleagues Judge Britt Grant and Judge Ed Karnes, and this is our final day of this OA sitting. I know we're all regretful that we've had to go back to Zoom. I appreciate all of the attorneys being okay with that sort of last minute switch, but times being what they are. But hopefully we will be back in person very, very soon. I also thank Ms. Geddes for having served ably as our courtroom deputy and timekeeper this week. For those of you who have not appeared before us in the past, we operate on the traffic system. Your time remaining will first appear in green. When you get down to two minutes, it will appear in yellow, and it will turn red when you have reached the end of your allotted time. If you haven't finished at that point, finish your sentence or I'm going to stop you. So we have four cases on our calendar today. Our first case is United States of America versus Ms. Grady et al. And we have three attorneys appearing for the appellants. And I'm going to mess up the first name, Ms. Amiot, Mr. Cosgrove, and Ms. Holsey. And then Mr. Stutchell is appearing for the government. So as I see here on my sheet, it looks like the attorneys for the appellants have divided up the time. So Ms. Amiot, and again, if I'm mispronouncing, please correct me. If you're ready to proceed, please begin. I am. Thank you, Your Honor. May it please the court. My name is Stephanie Amiot. I represent appellant Martha Hennessy in this appeal. The issue I'm addressing is whether the government satisfied the least restrictive alternative standard that Congress enacted in RFRA. I will rely upon my filed briefs for the sentencing arguments unless the court has any questions for me. Your Honors, Ms. Hennessy is asking this court to reverse the district court's denial of her motion to dismiss because the government failed to provide sufficient evidence under strict scrutiny to rebut the alternatives available to criminal prosecution, including Hennessy's proposed religious exercise on the base. Undisputedly, Ms. Hennessy established a prima facie case under RFRA, which the magistrate determined her acts were both religious in nature and aimed to reject violence. At no time were any findings of fact entered, nor any witnesses testified that the religious exercise was to trespass, destroy, or depredate property, which is what the district counsel then why did they do it? If that wasn't part of their religious exercise, why do it? Your Honor, under RFRA, the definition of religious exercise is to be broadly construed. Not really. When it comes to less restrictive alternatives, our precedent says that you focus on the actual activity that is being impeded or punished or restrained, and that actual activity here was not putting flowers on a memorial. It was vandalism. Your Honor, with respect to the testimony that was in the record and the findings by the magistrate, those were very clearly stated that the acts were motivated by their sincerely held religious beliefs, but that the acts themselves were not actually to trespass, depredate, or destroy government property. What do you mean the acts themselves? Of course, that was the acts themselves. That's what they did, and that's what the criminal charges specified, and that's what they were punished for. Well, that might be what the district court had held, Your Honor. What the critical distinction is, is the actual definition under RFRA, which is to interpret the religion. So, as I understand your argument, they could have gone in and blown up some of the facilities and said, hey, you can't punish us for that because that would impinge on our exercise of our religious beliefs. You've got to offer us an alternative and let us come back and place some flowers around the memorial. Not necessarily. While that would certainly be a more drastic example. How is that different except in the extreme, which of course is very fascinating. It's a more extreme analogy to what you're arguing. Don't focus on what they did. Don't focus on the blood and the vandalism. Don't focus on any damage. Don't focus on the cut fence. Just focus on what they could have done had they not done these criminal acts. What RFRA is more concerned with, Your Honor, and what our appeal issue is, whether or not the while the court is certainly asking a valid question and asking for a distinction regarding the acts committed by Ms. Hennessey and the others versus other acts such as blowing up a building. The concern is that if we define the religious exercise as the acts crimed or as the acts alleged in an indictment or the crimes that are alleged, it would essentially render RFRA inapplicable in criminal cases because it gives you a circular reasoning. You don't deny that our precedent says we look at the past acts. No, I don't deny that, Your Honor. I think that the distinction, though, is that there's, first of all, no basis in the record to reach this conclusion. Okay. The district court's opinion, she outlined in great detail what the government said was its substantial interest in this. This is a very important strategic defense facility. It's always on high alert that the damage done puts the base on high alert and stops the base's ability to defend the country. How is that not sufficient? How has the government not met its I see my time is up. If you would answer that question, please. Yes. Thank you, Your Honor. Judge Branch, the reason that the reasons that were provided by the government are not sufficient under the least restrictive alternative test is because the base exercised numerous exceptions that directly undercut the points that Your Honor has just raised. There is frequent public access to those areas on the base, in particular the monument display. In addition, the base offers debarment letters to individuals that it feels have violated the law or should not be on the base. In addition to that, there's other religious So the government doesn't have a strong interest in preventing vandalism of a nuclear submarine base. Your Honor, with respect to this particular case for the least restrictive alternative test, the compelling interest itself is something that we are not necessarily disputing. Our concern with respect understood you, but let me ask you this way. If we buy your argument, that means a different group, another seven, call them plowshares, too, could pick a time and go in and do exactly the same thing. And when the government attempted to prosecute them, they could say, well, oh, less restrictive alternative. Let us put flowers around some part of the base and let us pray and let us have a singing festival in here. You can't punish this, right? I mean, by your argument, nobody can be punished for these acts if they're part of a sincerely held religious belief. Respectfully, no, Your Honor. It's an individualized case-by-case basis. I'm sorry, the plowshares, too. I chose that because I'm an identical group of people, identical in motivation, identical in good faith, bad faith, whatever, identical in their religion beliefs, could do exactly the same thing. And then comes plowshares three and plowshares four and plowshares over the horizon, right? So long as these people are matched pretty substantially by another group, they can continue doing this and the government can't punish them. Not necessarily, Your Honor. It would depend upon the evidence that is presented by the government before the- Same evidence presented in the future that was presented in this case. The government can't punish them. With respect to the remedy that is offered under RFRA, if the government fails to meet its burden under strict scrutiny- It's a yes or no question. If this is repeated in the future in materially identical fashion and facts and circumstances, the government cannot punish them under your position. True or false? That is correct, Your Honor. They must utilize the less restrictive alternatives that are available and that have been offered by the defendants and that are also exercised already by the military base, which includes offering military sentries to other religious protesters who are on the base. Thank you. You have exceeded your time. You have saved some two minutes for rebuttal. Let's turn to Mr. Cosgrove. Thank you, Your Honor. May it please the court. I'm Joseph Cosgrove on behalf of appellate Claire Grady. I'd like to focus with the court's indulgence. I'd like to focus on the appropriate test which the district court must apply when it is considering least restrictive alternatives. In this case, the the alternatives that may be available under the least restrictive analysis come from the proponents, in this case, defendants. They must outline what their alternatives are to protect the government's compelling interests. That's what happened in this case, but as we cited in the reply brief in the Legatus case from the Eastern District of Michigan, the Legatus indicates that, and I agree with the district court in Legatus, that Wilgus turns RFRA on its head. It places the burden on the defendant to come up with alternatives. Will the government accept this one? No. Will the government accept that one? No. Will the government accept the third one? No. Instead, what the Legatus case indicates is that the burden is on the government, as RFRA says. In this case, the district court did not impose that burden. Instead, the district court essentially, and the Wilgus court as well, essentially gives the government a pass to say, this is the only thing that we have to consider. We believe that to protect the compelling interests that we've outlined, prosecution is the only thing available. Well, district courts are certainly talented enough and skilled enough to inquire and to consider. What analysis did you engage in? What steps did you take to determine that indeed, this alternative prosecution in this case- Let me ask you something, counsel. I don't think we've banned common sense from analysis. Why would a regime of law in which the government said or was forced to say, if you break in and vandalize property on a highly sensitive military base and destroy property and conspire to do so and do so, your punishment will be you determining what is a good thing for you to do. You won't be criminally punished. You get to suggest an alternative. How does that make any sense at all? How would that serve the government purpose of deterring vandalism and deterring threats to security and deterring someone from disrupting sensitive military operation? I understand your question, Your Honor. Again, we have to look at the statutes that you're indicating, the trespass, the damage of property, et cetera, is also aligned with RFRA. Congress gave you this. We did it. I'm asking you under your regime, if we adopt your theory, what could the government do to effectively deter people from doing this in the future? Your Honor, I will try not to be flippant, but as I noted in my reply brief, the government could have a better security system. These people walked around the base for two hours. Stop me before I violate the law again? How could they stop them under your view of RFRA? Because if they believe that these acts are an important part of their religious exercise, then how is stopping them from performing these acts any better than punishing them afterwards from a RFRA perspective? Your Honor, I believe if you look at the record, what they said, this was evangelical in its action. Claire Grady said that her purpose was to convey a message. Ms. Hennessey said something similar, that the biblical admonition to tell someone when they are wrong. In this case, these defendants believe that nuclear weapons are wrong. They were conveying a message and doing it in symbolic and dramatic fashion. They only did what they could do as soon as they were confronted, not considering the four times or so that the security guards drove past them and did not take action. But once confronted, they simply continued with relaying their message, evangelical as it is, to spread the word that they believe is true. So they only did what they could. Are there completely legal ways that they could spread that message? They could talk about it or put out pamphlets or lay down flowers or even yell about it. I mean, there are a million ways. Why is it the government's responsibility to keep them from breaking the law? I don't see that kind of affirmative responsibility on the government and RFRA. I would like to hear what the government's response is, not today necessarily from my learned colleague, but what the government would tell the district court if the court had not implied or applied Wilgus, but had implied more the Legatus test. I would like to see that and I would like to see this remanded so that that could occur. Because what did the government do in making its determination that this is the least restrictive means? I respect how we look at this, actions that took place and what Judge these statutes that as the Supreme Court has said, RFRA is a super statute. I've never heard of a statute being super, but this one is. If Congress wants to impose a restriction, a separate exception under RFRA, it can do so. Thank you, Mr. Cosgrove. You have now exceeded your time. Thank you. But you have saved a minute for rebuttal. So we'll turn to Ms. Holsey. You're still on mute. Good morning, Your Honors. May it please the court, Juanita Holsey on behalf of Carmen Trotta. Today, I would like to adopt all of the oral arguments that have been advanced by councils for Grady and Hennessey and take an opportunity to highlight a few points. I believe that it's clear from the record that Mr. Trotta was participating in a religious protest. If we look at his affidavits that were submitted and if we look at the testimony that was provided, it was strictly a religious protest and now the government is characterizing that as criminal action. The government had multiple other options available. What if, let me ask you a question. So this is a religious act that your client has committed, goes in and encounters a security guard and if your client believed that he or she needed to this? Your Honor, I believe that that wouldn't necessarily be an issue in this particular case. This is the case I'm posing. Tell me if, so there was destruction of property, where does this end? What if as part of the religious exercise, this group of protesters had killed a security guard believing that that was necessary to stop this base? Where would the line that you're drawing end? On a case-by-case analysis, Judge. Absolutely, if there was an issue with someone having died, I think that would most certainly cross the line. However, with this particular religious sect, violence is outside of there. I'm sorry, counsel, cross what line are you drawing? Are you saying RFRA applies the way you're arguing to non-violent acts but not to violent acts? No, Your Honor, I'm stating that for them. Then let's take a violent act. These facts exactly except instead of cutting the fence, they cut a guard. Not this group, another group. How would your analysis, if at all, be different? Judge, I think that it would come down to a sincerely held religious belief. We're saying that Plowshares 2 believes that you have to do whatever is necessary to stop this base from its development and use of nuclear weapons. If you encounter somebody, you have to kill them. Tell me where you're drawing the line. Why is that different? I understand your question. I believe that in this particular case or in the example that you provided, that the government would still be required to hold its burden. That is the difference. The government didn't meet its burden in this particular case. In a case where there was violence, perhaps, then I would assume and hope that the government would meet its burden. You're saying that in a case where the security guard was killed as part of this religious exercise, that the government should consider debarment letters or giving a place on the base to protest peacefully? I'm saying that it should be considered and that they should still meet their burden and prove to the court that that's not an acceptable alternative or least restrictive alternative. All right. Thank you. You have exceeded your time. We will now turn to the government. Mr. Stuchel, if you're ready, please proceed. It please the court. Good morning, James Stuchel, proudly representing the United States. At bottom here, there's one fundamental reason why this RIFRA claim must fail. That is, there is irreconcilable tension between two competing interests. On the one hand, the government's admittedly compelling interest in protecting the security of its own property, especially in this case, strategic military assets. And two, on the other hand, the defendants' sincere religious exercise that they have to destroy that very same property. There's simply no daylight between these two competing interests. And RIFRA says for that reason, the government's prosecution must prevail. At stage two of RIFRA, the government is required to show simply that the prosecution in this case furthered at least one of its three compelling interests. And we did that easily in spades. We demonstrated through the evidence at the trial with respect to all seven defendants that their specific actions on the base that night in question directly conflicted all three of our compelling interests. The first interest was protecting the security of the military assets. Well, they snuck onto the base and destroyed and depredated those very assets. The second interest was protecting the security of all people on the base, employees, contractors, and even the intruders themselves. They put that in great jeopardy by triggering at 1 a.m. under the dark of night, the reaction of our security forces had no idea what was going on. These interests were directly violated by the defendants. And so that directly invoked the government's compelling interests. And that's never been disputed. So then the government simply had to show that there was no alternative means of protecting those interests. To do that, it has to show there's no alternative way of protecting interests, but that would also accommodate all of the defendant's religious exercises, meaning their specific actions in this case. And even at this late date, through all the argument and briefing in the district court and in this court, no one has ever come up with an alternative that would do that. Even here today, in the district court, the defendants offered three proposed alternatives. All of them failed for the same reason that they would not accommodate their specific acts here. The first was that the government could prosecute them on fewer or less punitive charges. Well, that wouldn't accommodate their acts, that would still operate as a substantial burden that would tend to dissuade them from doing the acts they actually took. No less than prosecution on the current charges. The second option they suggested was basically civil remedies such as an abandoned bar letter or a civil injunction or maybe civil damages. That suffers from the same defect. Again, it would operate as significant pressure that they not engage in the acts. It would not accommodate their religious exercise. The final one they exercise on some designated portion of the base. That's fatally vague. I mean, it's just not good enough at this stage of the analysis. They never stated exactly what that religious exercise would entail. And that's a crucial question. Either their proposed religious exercise would involve depredation and destruction of government property, or it wouldn't. If it did involve that, then obviously it would not further the government's admittedly compelling interest. So it would fail as a least restrictive alternative. If it would not involve destruction of property, then it would not accommodate their very specific religious actions at this case. And so for that reason, there is no alternative to prosecution and their RFRA defense must fail. Now, I think the defense actually realized this. And so there's been some backpedaling here. In the reply brief, they for the first time claimed that they never conceded that the religious exercise under RFRA was their specific acts. That's easily demonstrated to be false. After the evidentiary hearing on RFRA, the magistrate judge ordered supplemental briefing devoted solely to RFRA. All seven defendants, including the three at issue here, filed essentially the same brief. The very first heading in the argument section of their brief read this. And I quote, each action of the defendants at Kings Bay constituted an exercise of religion. That's on docket number 339 at page five. That section then goes on for a page and a half to cite the evidence of the record and states two more times that their, excuse me, that their religious actions at issue in RFRA were their specific acts that night. That's the defendant saying exactly what I'm maintaining here and they can't contradict it on appeal. That would be invited error. Asking the court to reverse something that they themselves advocated in the district court is completely impermissible. And so for that reason, that shows that they cannot establish a legitimate alternative to prosecution because no prosecution conceivable would both protect the government's property, but allow them to destroy it. Today, Mr. Cahn's growth has invoked Wilgus as if that's somehow of an outlier. The principle on which he attacks is the principle that to establish least respective means the government must rebut all the alternatives that the defendants themselves propose. That Wilgus was only one such case to hold that. There's actually several more. I discuss them on page 54 of my brief. In fact, this very court in Knight said the same thing. Yellow Bear with then Judge Gorsuch in the 10th Circuit, Christy of the 9th Circuit, and most recently in 2019, Greenhill v. Clark. All four of those circuit opinions say that as part of the least restrictive analysis, the government just has to rebut the alternatives, the claimants have proposed. And we've done that here over and over again. None of their alternatives would accommodate their specific actions in this case. None of their alternatives would allow the government to protect even one, much less all three of its compelling interests. And so for those reasons, this court should affirm. The defendants raised a lot of other issues. Does the court have any questions or comments about any of those other issues? If not, then I'll yield back my time and respectfully ask the court to affirm. Thank you. Thank you. All right. Ms. Amiotte, you're up again. You've got two minutes. Thank you, Judge Branch. Your Honor, there is testimony in the record by Scott Bassett that there was no threat to base personnel, military artifacts, or submarines. And he made this testimony and national statement in the news after he reviewed photographs of the spray painting that my client did and the other damage that was committed by the other defendants. So for the government to claim that they have adequately rebutted or proved that there were other alternatives available is simply not supported by this evidentiary record. How does the government show that there is a least restrictive alternative? How can they set up a situation where your clients can destroy government property and yet protect government property? Your Honor, I can only speak for Ms. Hennessey's testimony, which was very clear at the evidentiary hearing that she would avail herself of the opportunity to go to the missile display and to leave a book and to leave a banner. But that's not what we're looking at. The actions committed, there was destruction of government property. So if we're looking at those acts, what is the least restrictive means other than prosecution that the government could provide that would allow your client to destroy government property? That is what she did. She testified that it would not substantially burden her religious exercise to leave a book. No, you're answering my question. She's now trying to look at different behavior. She was exercising her religious beliefs by destroying government property. We focus on that. How does the government accommodate her religious exercise of the destruction of government property? Your Honor, my client's specific acts at the base were to leave crime scene tape, spray paint a sidewalk, spray paint a base. You understand that it's destruction of government property. I understand that that's what she was convicted of and that's what. Okay, so how do they, how does the government come up with a different way of letting her do those things, not something new, those things? She has not, I see my time is up, Your Honor. May I please answer the question? Thank you, Your Honor. Ms. Hennessy testified that the only part of the religiously based acts that she would not partake in would be basically the spray painting. But I would point out to the court that even if in fact the government were to allow her to do all of the same acts that she did previously, which was to leave crime scene tape, spray paint a sidewalk, leave a banner and read an indictment and leave the doomsday machine book, that those are easily removable. And RFRA certainly contains no requirement that the government doesn't incur expense. If your client did not think that she was religiously obligated to use spray paint, then why would RFRA apply anyway? If that's not a religious act by her, then RFRA doesn't come into play. She's just an ordinary vandal. No, she was religiously motivated to utilize spray paint on the night in question, Your Honor, but her proposed least restrictive alternative or less restrictive alternative did not include that particular component. And she did testify that that would not substantially burden her religious exercise. And under the definition of RFRA and... Then counsel, why did she do it that night? On that night... It wasn't part of her legitimate religious exercise. She wasn't compelled to do it by her religion. Why did she do it that night? On that particular night, she was religiously motivated to utilize the spray paint. I see. So when somebody is caught doing something, they can say, I was religiously motivated to commit that crime, but I'm no longer religiously motivated. So the less restrictive alternative is to let me not do the crime now and don't punish me for the ones I was doing. That's not going to fly, don't you? The government's burden is to show that it's not substantially burdensome to the religious exercise. And her testimony was that her proposed religious exercise, which did not include the spray paint component, would not substantially burden her religious exercise, which the government... And it seems like she would have done that in the first place and we wouldn't have a RFRA case. I'm sorry, what was I going to say? If it's not a substantial burden on her to not spray paint, then she chose to spray paint for her own reasons and RFRA doesn't apply. You can't have it both ways. Well, the district court in Hoffman actually found that a slightly modified version of a religious exercise still satisfies a least restrictive alternative. And in that particular case, the city defendants proposed going onto the federal lands and not going to pre-set locations, which they had not done previously. So the question is whether or not the religious exercise becomes substantially burdened, but not that they have to partake in the exact same religious exercise or religiously motivated acts. Thank you. You have exceeded your time, so I'm going to cut you off now and Mr. Cosgrove, you have a minute. You're on mute. Thank you, Your Honor. Wilgus has run into strong headwinds at the Supreme Court. While it may be the standard that's applied in the Ninth Circuit and several other circuits, it's not applied in the Sixth Circuit. It's never been adopted by the Supreme Court. And in fact, in Holt, Justice Sotomayor's concurrence embraced it, urged it and did not gain a majority. In Hobby Lobby, Justice Ginsburg invoked Wilgus and urged the court to consider Wilgus. It did not gain a majority. So in those two instances, Wilgus has failed at the Supreme Court level. This court's decision will have broad ramifications for other religious exercise cases that have nothing to do with nuclear weapons or submarine bases may have to do- Thank you, Mr. Cosgrove, you have exceeded your minute. Thank you, Your Honor. All right. Thank you all. We have your case under submission.